## No. 136.—B. G. & S. R. STEWART v. LOONEY & WELLS.

In this case the facts show that the tutor of the minors purchased a piece of property in the town of Shreveport in the name of the minors he represented; that he was much indebted at the time, and that the heirs he represented had no means of their own which were available at the time; that at his death the lands or lots were inventoried as his property, and sold at his succession sale. This action is brought by the heirs (since become of age) for the recovery of the lands or lots purchased by their tutor in their name. The defense of the purchasers at the succession sale of the tutor is that the title to the heirs by the tutor is a fraudulent simulation. Held that under this state of facts, and under the ruling in the case of Frazer v. Prichard, 6 An. 728, the purchasers at the succession sale had the right to allege and show the simulation.

APPEAL from the Tenth Judicial District Court, parish of Caddo. *Levisee*, J. *Nutt & Leonard* for plaintiffs and appellants. *Looney & Wells*, in person, defendants and appellees.

HOWE, J. This is a petitory action to recover certain lots of ground in the city of Shreveport, which plaintiffs allege they acquired by purchase from B. F. Logan on the twenty-eighth December, 1863.

The defense is that the plaintiffs' title is a fraudulent simulation.

There was judgment for defendants, and plaintiffs have appealed.

It appears that, at the date of the act of sale from Logan in December, 1863, the plaintiffs were minors; that they were not living at

Shreveport where their father, H. T. Stewart, resided; that they had no property (except perhaps a very trifling sum due them eventually from the succession of their mother, which amount, if existing at all in 1863, was too insignificant to be taken into account); that H. T. Stewart had unsatisfied judgments hanging over him; that he purchased the property in the name of his minor children, the plaintiffs, with the purpose admitted to one witness, at least, of putting it in their names to conceal it from these judgments; that he, and not the minors, furnished the money to make the cash payment of two thousand dollars, and gave two notes in his children's name for one thousand each, one of which has been paid by his administrator; that he remained in possession of the property up to the time of his death in 1864; that it was inventoried as an asset of his succession; and that it was sold at succession sale as his property and purchased by the defendants.

We think the defendants had the right to plead simulation as against the title and claims of the plaintiffs. This point was expressly decided in the case of Frazer *v.* Pritchard, 6 An. 728, and inferentially in the succession of Weigel, 18 An. 49.

The only question, then, is whether the defense of simulation here set up is established, and we concur with the judge *a quo*, who saw and heard the witnesses, that it is; that the interposition of plaintiffs as parties in the act of sale from Logan was fictitious; that the property was really that of H. T. Stewart at the time of his death; that it was inventoried as a part of his succession; and that it was sold under a decree of a competent court at public sale, and purchased by the defendants.

Judgment affirmed.

Rehearing refused.

---

Taliaferro, J., *dissenting.* The simulated, in contradistinction to an actual though fraudulent sale, has been often defined in the decisions of this Court. It is that which is clothed with the empty forms of a sale, without possessing two of the elements essential in the contract of sale : the consent of the parties and the payment of a price. In the simulated sale, as repeatedly decided, there is no intention in the parties that a sale shall take place. What is presented as the consent is in reality no consent; the exhibition of the payment of a price, is not the payment of a price. There exists no *aggregatio mentium* in the parties to form a sale. The *aggregatio mentium* in the simulated sale is to delude and deceive others by holding up to their view a spectral illusion, a vain and empty vision of a pretended contract, unreal, unsubstantial, the mere shadow of a title, and nothing but a shadow.

79

It has been well settled by numerous decisions of this Court, running back through a series of more than thirty years, that simulated sales convey no title, and that a creditor may disregard the thin veil thus thrown around his debtor's property, and seize it directly without resorting previously to the courts to have the fictitious, nugatory title judicially set aside.    And why ?    Simply because no sale has been made.    A's property, in such a case, continues to be his property although it be enveloped with the *vana effigies*, the airy shape of a sale to B.

On the other hand, the law bestows a degree of regard and respect upon actual contracts, even though they be fraudulent, and forbids that they be disregarded entirely as in cases of mere simulation.    The actual contract, although fraudulent, can not be so summarily dealt with.    In contracts of that character one of the parties may be in good faith.    His rights must be protected.    In all cases of an actual contract, where it is tainted with fraud intended to injure third parties, the complaining party must invoke the aid of the law, lay bare the fraudulent act by proof, show how it injuriously affects his rights, and obtain a judgment annulling the sale, before he can render the property, fraudulently sold, subject to his just claims.    Cases have been frequent where parties, in hot haste to reach the property of their debtors, and seizing it in third hands, alleging simulation, have been enjoined, and upon a hearing in the courts have had their proceedings set aside and themselves thrown back upon the revocatory action.    The distinction between mere simulated sales and actual though fraudulent sales, has been broadly drawn and distinctly marked.    The cases in which this has been done are so numerous that it is unnecessary to refer to them in detail.    Still, a practice reprehensible in my opinion, has been to no small extent inaugurated, which confounds this obvious distinction, and which, as caprice may direct, attacks actual contracts under the pretense that they are "simulated and fraudulent."    This practice is deemed a proper and convenient one to resort to when the revocatory action is prescribed.    By simply calling the act "simulated and fraudulent," it is dealt with as a pure simulation.    A pretended or sham contract is necessarily both simulated and fraudulent; but an actual contract, whether fraudulent or not, can never be simulated.    It is a solecism to apply the term "simulated" to a contract which the parties made real, and intended to make real.

The practice I have adverted to has, I am disposed to think, been resorted to in the case now before the Court.    The sale from Logan to the minor children of Stewart, represented by their father, is attacked as "simulated and fraudulent."    The facts presented by the record satisfy me that there was, in this case, an actual contract.    It

is clear to my mind that Stewart intended to buy in his representative capacity, and that Logan intended to sell. A large portion of the price was paid. A delivery was made, and Stewart went into possession as the natural guardian of his children. No law prohibits a father from buying property for his children. Certain formalities are required to be observed in the purchase of property for minors by their tutors, but the neglect of these do not necessarily annul the acts so made.

The record satisfies me that there were really few debts owing by Stewart at the time of his death. The pretended judgments displayed by the administrator appear to have been either paid or prescribed before the administration. No creditor seems to have presented them. The administrator is himself at a loss to know who represented the debts placed on his final account. The two largest items of indebtedness, $1080 to Brooks & Price and $471 to Swink, were stated by the administrator to have been contracted on a Confederate money basis. These were debts for which he should not be allowed a credit, for he was not bound by law to pay them. The other debts are chiefly if not entirely debts having their origin in the administration of the estate. The judgment creditors alone, if there were any, might have seized at their peril the property in the name of the plaintiffs, and alleged in defense that the sale was simulated. But the judgment creditors in this case were mythical. They were unknown, and consequently were not pressing claims. Has the administrator greater rights than the creditors he represents? Where none of them could resort to a seizure of property on the ground of simulation, shall the administrator step forward, place upon his inventory property the title to which he finds not in the name of the decedent, but of other parties, and proceed to advertise and sell it? Suppose that Stewart intended a fraud upon his creditors, and the administrator acting in their interest felt it his duty to have the sale set aside and the property declared to belong to the estate. He could only have brought a revocatory action for that purpose, and he could only have done that where there were creditors who have been injured by the sale. 6 An. 494. No showing of the sort has been made in the case now before this court.

The administrator in this case has moved altogether *ex propio motu*. His administration, so far as it purports to have been regularly conducted, is itself a simulation. The administrator, it does not appear, was a creditor, and yet he appears to have been far more vigilant than those whom he represents were creditors. The course he has pursued strikes me as anomalous, and but little deserving the sanction of the tribunals of justice.

The defendants' counsel rely chiefly on the case of Frazier v. Prichard et al., 6 An. 728. The court there said the act of Frazier was a simulation, but simulation of a particular kind. The facts in that case

B. G. & S. R. Stewart v. Looney & Wells.

were that Frazier bought for his minor children a tract of land from Morris, taking the title in their names. A valuable consideration was actually given; a sound price was really paid. The tract of land was delivered, and Frazer took possession of it under the sale. I regard this case as isolated. It stands alone and unsanctioned by any previous or subsequent case. It is confronted by a host of decisions which are uniform in declaring a doctrine utterly at variance with it, and which mark it as antagonistic to the well settled jurisprudence of the State. In that jurisprudence it has been long and definitely determined that by a simulated sale no title passes. The logical sequence of that doctrine, when applied to the facts of the case at bar, is that the property taken as Stewart's is not his, but Logan's, for, being a simulation, no title passed from Logan. If the deed from Logan is a sheer simulation, then there is no deed. No title passed, if the deed is invalid. But we are told that title passed by it to Stewart himself. If title passed by the deed, it is valid, and can not be attacked as a simulation. But if valid it must speak for itself. We must learn from its own recitals to whom the title passed. This court is powerless to interpret a valid written contract to mean anything different from that which the plain purport of the language used indicates. The alternative is stern and inevitable. The act purporting to be a sale from Logan to the plaintiffs is a title to the plaintiffs or it is a title to nobody. If it be a title to the plaintiffs, the defendants have no right to attack it as a simulation. I think the p aintiffs should have judgment in their favor, reserving to the defendants their right to proceed according to law by a revocatory action to set aside the plaintiffs' title.

I concur with Mr. Justice Taliaferro in the dissenting opinion expressed in this case. W. G. WYLY.